DAVID M. PORTER, Bar #127024
Attorney at Law
Counsel Designated for Service
P.O. Box 11008
Takoma Park, MD  20913
Telephone:  (916) 893-4217
Email:  porterlaw2025@gmail.com

Attorney for Defendant
STEPHANIE MADSEN

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>STEPHANIE MADSEN,<br><br>          Defendant. | No. Cr. F 20-238 JLT 2<br><br>**MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(2) AND AMENDMENT 821**<br><br>RETROACTIVE CRIMINAL HISTORY REDUCTION CASE<br><br>Judge:  Honorable JENNIFER L. THURSTON |

Defendant, STEPHANIE MADSEN, by and through her attorney, David M. Porter, moves the Court pursuant to 18 U.S.C. § 3582(c)(2) for an order reducing her term of imprisonment to 122 months on the ground that the retroactive application of Amendment 821 reduces her applicable offense level, and such term is no greater than necessary to achieve the statutory purposes of sentencing.

**INTRODUCTION**

Ms. Madsen is eligible for a sentence reduction based on Part B of Amendment 821 to the United States Sentencing Guidelines, which reduces by two the offense level of certain defendants with no criminal history points.  The Commission made this "targeted change[ ] to reduce recommended guideline ranges for offenders with zero criminal history points," in conformity with its "mission of implementing data-driven sentencing policies."  *See* USSC Reasons for Amendment 821, available at https://www.

1   ussc.gov/guidelines/amendment/821.

2         We anticipate the government will acknowledge Ms. Madsen is eligible for a
3   sentence reduction; thus, the only issue is whether this Court should exercise its
4   discretion to reduce her term of imprisonment.  The commentary to the Guidelines
5   instructs courts to consider three factors in reducing a sentence:  (1) the goals of
6   sentencing as embodied in 18 U.S.C. § 3553(a); (2) public safety; and, (3) post-
7   sentencing conduct.  *See* USSG § 1B1.10 cmt. n.1(b)(i)-(iii); *see also* 18 U.S.C.
8   § 3582(c)(2).  In 2023, this Court sentenced Ms. Madsen to 150 months imprisonment.
9   She now seeks a reduction to 122 months, which we contend not only promotes the goals
10  of sentencing, but furthers public safety, and recognizes Ms. Madsen's remarkable record
11  of rehabilitation.

12        On September 2, 2022, Ms. Madsen accepted responsibility and pled guilty to one
13  count of conspiring to distribute and possess with intent to distribute methamphetamine,
14  in violation of 21 U.S.C. §§ 846, 841(b)(1).  Dkt. No. 373.  Pursuant to the written plea
15  agreement, while Ms. Madsen and her counsel could "recommend whatever sentence
16  they deem appropriate," the government agreed to recommend "a sentence within the
17  applicable guideline range."  Dkt. No. 371 at 2, 5.

18        According to the presentence report, Ms. Madsen's base offense level was 38
19  based on the converted drug weight.  PSR at 10, ¶ 44.  Three points were deducted
20  pursuant to USSG § 3E1.1(a) & (b) for acceptance of responsibility, for a total offense
21  level of 35.  *Id.* at 11, ¶¶ 51, 52.  With no criminal history points, Ms. Madsen's
22  applicable guideline range was 168 to 210 months.  *Id*. at 22, ¶ 110.

23        At the sentencing hearing on March 29, 2023, the government, consistent with its
24  obligation under the plea agreement, recommended Ms. Madsen be sentenced at the
25  bottom of the applicable guideline range with a 10% reduction for substantial assistance
26  pursuant to USSG § 5K1.1.  Attachment A at 2.  In addition to this reduction, the Court
27  granted a downward variance of 2 months due to Ms. Madsen's employment record and
28

difficult upbringing, *id*. at 3, and sentenced her to 150 months imprisonment, to be followed by a 5-year term of supervised release. Dkt. Nos. 581, 584 at 2, 3.[1]

## ARGUMENT

**A sentence reduction is authorized under the retroactive zero-point guideline amendment and is appropriate in light of all the sentencing factors set forth in 18 U.S.C. § 3553(a).**

### A. Guideline Amendment 821 and USSG § 1B1.10

The Sentencing Commission promulgated Amendment 821, effective November 1, 2023, whereby it reduced the total offense level by two for defendants like Ms. Madsen with zero criminal history points and none of the listed disqualifying aggravating factors. USSG § 4C1.1(a).[2] As one court explained, the

---

[1] According to the Bureau of Prisons website, Ms. Madsen's projected release date is January 13, 2031, which assumes she receives all her remaining good-time credits.

[2] USSG § 4C1.1 provides for the two-level adjustment for zero-point offenders if none of the following 11 aggravating criteria applies:

> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
>
> (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);
>
> (3) the defendant did not use violence or credible threats of violence in connection with the offense;
>
> (4) the offense did not result in death or serious bodily injury;
>
> (5) the instant offense of conviction is not a sex offense;
>
> (6) the defendant did not personally cause substantial financial hardship;
>
> (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

>Sentencing Commission adopted Amendment 821 to moderate, when it applies, sentences that the Commission implicitly determined were too severe. The Amendment . . . provides relief only in narrowly confined circumstances. One . . . is when a defendant has zero criminal history points. As the Sentencing Commission's studies found, such offenders tend to have lower recidivism rates.

*United States v. Nichols*, 2025 U.S. Dist. LEXIS 12653, *4 (N.D. Ohio Jan. 24, 2025). The Commission also mandated that Amendment 821 applies retroactively, effective February 1, 2024. USSG § 1B1.10(e)(2) (Nov. 1, 2023), 88 Fed. Reg. 60543. This Court has jurisdiction to reduce Ms. Madsen's term of imprisonment based on the new offense level under 18 U.S.C. § 3582(c)(2).[3]

Through USSG § 1B1.10, the Commission articulated a two-step procedure for implementing retroactive amendments. *First*, a defendant is eligible for a sentence

>(8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
>
>(9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or
>Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense);
>
>(10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role); and
>
>(11) the defendant was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

None of the disqualifying factors applies to Ms. Madsen.

---

[3] 18 U.S.C. § 3582(c)(2) states:

>In the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o), upon motion of the defendant, the director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable, if such reduction is consistent with applicable policy statements issued by the Sentencing Commission.

reduction if an amendment lowers the defendant's previously calculated guideline range, and, with limited exceptions, the defendant did not previously receive a sentence at or below the minimum of the amended range. *See Dillon v. United States*, 560 U.S. 817, 826 (2010). One of the exceptions -- USSG § 1B1.10(b)(2)(B), for substantial assistance to authorities -- applies in this case.[4] *Second*, the Court should "consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Ibid*.

**B.   A sentence reduction does not implicate public safety concerns, USSG § 1B1.10 cmt. n.1(B)(ii)**

If past outcomes are any indication, retroactive application of guideline amendments does not result in an increased rate of recidivism.[5] And there is even more reason to believe that public safety would not be an issue with this amendment. Unlike

---

[4] USSG § 1B1.10(b)(2)(B) provides:

> EXCEPTION FOR SUBSTANTIAL ASSISTANCE.--If the term of imprisonment imposed was less than the term of imprisonment provided by the guideline range applicable to the defendant at the time of sentencing pursuant to a government motion to reflect the defendant's substantial assistance to authorities, a reduction comparably less than the amended guideline range determined under subdivision (1) of this subsection may be appropriate.

[5] *See* USSC, *Retroactivity & Recidivism: The Drugs Minus Two Amendment* 6 (2020), https://tinyurl.com/85r8sudu (reporting no statistically significant difference in recidivism rates of people released early from retroactive relief and comparable people who served full sentences); USSC, *Recidivism Among Federal Offenders Receiving Retroactive Sentence Reductions: The 2011 Fair Sentencing Act Guideline Amendment* 3 (2018), https://tinyurl.com/f7bmu553 (finding the recidivism rates "were virtually identical" for people who were released early through retroactive relief and people who served their full sentence before retroactivity took effect); USSC, *Recidivism Among Offenders Receiving Retroactive Sentence Reductions: The 2007 Crack Cocaine Amendment* 3 (2014), https://tinyurl.com/z3t6kpry ("Retroactive sentence reductions did not result in higher recidivism rates. . . .").

Amendments 782, 750, and 706,[6] Part B of Amendment 821 was based on Commission studies showing zero-point offenders have significantly lower recidivism rates. The Commission concluded that existing guidelines often overstated the risk these offenders posed, leading to excessive sentences. Because the guidelines did not identify people more likely to be rearrested in the first place, there is no reason to believe that decreasing by two the base offense level under USSG § 4C1.1(a) for people who have already been sentenced would be linked to increased rearrests.[7] Indeed, there is ample reason to believe public safety would be *enhanced* by permitting people serving unnecessarily long sentences to return home sooner.[8]

### C.  Ms. Madsen is eligible for a sentence reduction because her guideline range with Amendment 821 has been reduced to 135 to 168 months.

Ms. Madsen pled guilty to one count of conspiring to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(b)(1). Dkt. No. 373. At sentencing, as discussed above, the Court followed the presentence report in

---

[6] These Amendments reduced sentences for drug offenders (1) where the Sentencing Guidelines had been pinned to mandatory minimum terms, causing overcapacity at and costs to the BOP, and also (2) to address systemic inequities.

[7] *See* https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_821R.pdf.

[8] *See, e.g.*, Don Stemen, Vera Evidence Brief, *The Prison Paradox: More Incarceration Will Not Make Us Safer* 2–3 (2017), https://tinyurl.com/5n933pvc (recounting the criminogenic effects of high rates of imprisonment including weakening of social and family bonds, deprivation of income and future income potential, disrespect for the law, and collateral consequences like loss of employment and stable housing); Martin H. Pritikin, *Is Prison Increasing Crime?*, 2008 Wis. L. Rev. 1049 (2008) (cataloging a host of crime-producing effects of imprisonment and estimating their aggregate impact on crime rates by drawing inferences from existing data and research); *see also* U.S. Sent'g Comm'n, Staff Discussion Paper, *Sentencing Options Under the Guidelines* 19 (1996), https://tinyurl.com/ywhttnec (acknowledging that alternatives to incarceration "divert [individuals] from the criminogenic effects of imprisonment which include contact with [people convicted of] more serious offenders, disruption of legal employment, and weakening of family ties."

calculating the total offense level of 35 as follows: base offense level of 38 for converted drug weight, minus 3 levels for acceptance of responsibility, for a total offense level of 35. PSR at 10-11. With no criminal history points and a criminal history category I, her guideline range was 168 to 210 months. *Id.* at 22, ¶ 110. Consonant with the government's recommendation under USSC § 5K1.1, the Court departed 10% from the low end of the guideline range and granted a 2-month downward variance to impose a sentence of 150 months, to be followed by a 60-month term of supervised release. Dkt. No. 584 at 2-3; *see also* Attachment A at 3 .

With Amendment 821, Ms. Madsen's offense level is now reduced by two pursuant to USSG § 4C1.1(a) because she has zero criminal history points and is not otherwise disqualified. Leaving "all other guideline application decisions unaffected," her new guideline range is reduced to 135-168 months as follows:

>Base Offense Level:  38
>
>Acceptance:  -3
>
>**Zero Point Reduction:  -2**
>
>Total Offense Level:  33
>
>Criminal History Points:  0
>
>Criminal History Category:  I
>
>**Guideline Range:  135 to 168 months**

With a comparable 10% reduction from the bottom of the amended guideline range for substantial assistance as was granted in the original sentencing, *see* USSG § 1B1.10(b)(2)(B), and for the reasons stated below, Ms. Madsen requests the court resentence her to a term of 122 months imprisonment.

**D.    A sentence reduction is warranted under 18 U.S.C. § 3553(a).**

As for the next step, consideration of the § 3553(a) sentencing factors warrants a sentence reduction. *First*, Ms. Madsen is an exemplary prisoner. She has completed courses designed to assist her in reentering civil society, including successful employment, understanding your emotions, narcotics anonymous, and drug education.

Attachment B.  She has paid her financial obligation.  *Id*. at 2.  The BOP has rated her a "MIMIUM RISK RECIDIVISM LEVEL," the lowest possible level.  *Id*. at 3.  *Second*, and even more important, as discussed in detail below, Ms. Madsen has truly used her time in prison productively, working rigorously to examine and address the causative factors that led to her incarceration.

Ms. Madsen has gone far beyond successful programming.  She was recently admitted into the highly selective Yale Prison Education Initiative program, where persons incarcerated in Connecticut take demanding, credit-bearing courses taught by Yale faculty and graduate instructors and held at the same level, with the same expectations, rigor, and grading, as courses offered on Yale's campus.  Attachments C & D.  Her classes there, beginning January 16, 2026, include Algebra and Middle Eastern History.

She has a thoughtful and realistic release plan, which includes obtaining her associate degree in liberal arts, continuing her education with grants awarded by the Prison Initiative Program, and ultimately obtaining a degree in Social Justice.  Attachment C.  Ms. Madsen is remarkably empathetic and, particularly given her current circumstances, positive in her outlook.  Several inmates write about how she is a valued mentor and has made a difference in their lives, helping them with legal paperwork, leading therapeutic groups, tutoring GED courses, and actively participating in their church.  Attachment E.

Ms. Madsen's longtime friend, Ernie Gaddis, writes eloquently about her "unwavering dedication to personal growth, education, and service to others," and how they have "remain[ed] friends throughout her difficult experience and still remain in contact on a daily basis":

> Rather than letting her time in Federal Prison define her, she has used it as an opportunity for transformation and deeper understanding of the very issues she has spent her career addressing.  [¶]  Stephanie is currently continuing her college education while incarcerated, demonstrating her commitment to self-improvement and intellectual growth.  She has expressed a strong desire to use her experiences—both

personal and professional—to advocate for young women who may not fully grasp the severe consequences of drug use and distribution.  She hopes to serve as a mentor, educating at-risk individuals about the realities of their choices and providing them with the tools to build a better future.  [¶].  Her rehabilitation is evident not only in her academic pursuits but also in her conduct and determination to make amends.  She has taken full accountability for her past and is eager to reintegrate into society as a responsible, contributing citizen.  With her knowledge, experience, and passion for advocacy, she has the potential to positively impact countless lives if given the opportunity.

Attachment F.

In her letter to the Court, Ms. Madsen details the significant efforts she has made to rehabilitate herself:

> I have maintained a weekly counseling with psychology staff.  I have completed and am still currently part of a variety of self-help classes, two being the current Female Integrated Treatment and Residential Drug and Alcohol Program (FIT/RDAP).  These two programs have been the most impactful and ha[ve] significantly changed my way of thinking, propelling me into a new and more productive state of mind . . ..  I am learning the detriment of unhealthy relationships and how to identify the red flags, how to rationally self analyze my thoughts and feelings which helps to control my impulsive behavior, distress tolerance skills, seeking safety, recognizing my troubled behavior and utilizing Dialectical Behavior Therapy skills, to empower myself to become as effective as I can be in my life.  No longer am I trapped in an unhealthy and untreated mind.  The facility I am currently housed in is FSL Danbury . . . , [which] is a "Modified Therap[e]utic Community" . . . requir[ing] a 24/7 treatment program lifestyle and mindset.  It helps me focus on overcoming my past traumas so that I may continue to grow and heal.

FITAttachment C at [1].[9]

---

[9] The program objectives of the FIT program are:

■ To create a holistic, female-specific community that addresses priority needs for women, including trauma informed care, other types of mental health treatment, substance use treatment, and educational/vocational skills.

■ To extend support for female inmates with mental illness beyond traditional professional services through creation of a standardized,

These are not just buzz words for Ms. Madsen.  She has very conscientiously put into practice the principles she's learned by mentoring and guiding other inmates, as discussed above.  Another example is when Ms. Madsen recently testified for Darrell Smith, a former correctional officer at FCI Dublin who was charged with sexually assaulting inmates, N.D. Cal. No. 4:23-cr-00110 YGR.  She explains:

> I now stand up for what is right, no longer what is "popular," no longer for what pleases others.  Recently, I took an unpopular stand, defending an innocent man.  In the past I would have seen this man as just an officer, someone seen as "the enemy" in the eyes of my peers within these prison walls.  I refuse to have that mindset, I choose to see him as a human being, with the right to be treated fairly.  I went back to California to testify on behalf of an officer who was being accused of a crime which he did not commit.

Attachment C at [3]-[4]; *see also* Attachment G.  Mr. Smith's trial ended in a hung jury, and all charges in the second superseding indictment were ultimately dismissed.

---

evidence-based treatment program that is individualized, integrated, and gender-responsive.

■ To deliver an effective program to enhance recovery and result in reduced criminality and recidivism.

■ To support effective reentry outcomes specific to the needs of women.

■ To institute a program that uses a Risk-Need-Responsivity model to match inmate risk to intensity of services provided.

Bureau of Prisons. (2022, August 11). *Program Statement* 5240.01, *Female Integrated Treatment (FIT)*, available at https://www.bop.gov/policy/progstat/5240_001.pdf.

According to the attached FIT Community Handbook, the program operates as a modified therapeutic community and "allows participants to address multiple issues such as mental health concerns, substance use, trauma, and education/vocational needs in a supportive environment."  Attachment I at 3.  For women such as Ms. Madsen, who participates in the RDAP as well, the program lasts at least 9 months and includes "500 face-to-face hours between treatment staff and participants."  *Ibid.*; *see also id*. at 7 (detailing the FIT daily schedule for every weekday beginning at 8:00 a.m., and going through 3:30 p.m., with a return to the mainline for one hour).

Attachment H.  As the attorney for Mr. Smith states, "Ms. Madsen is a good person with a strong moral compass."  Attachment G.

In short, Ms. Madsen has an extraordinary record of rehabilitation and the Bureau of Prisons itself recognizes she is at minimum risk of recidivating.  All the pertinent factors -- the Section 3553(a) considerations, the public safety, and Ms. Madsen's post-sentencing conduct -- point in the same direction.  A term of 122 months is sufficient but not greater than necessary to accomplish the purposes of sentencing.

## CONCLUSION

Accordingly, for all the reasons set forth above, Ms. Madsen respectfully requests the Court grant her motion and reduce her sentence to 122 months.

Dated:   December 31, 2025

Respectfully submitted,

 /s/ *David M. Porter*
DAVID M. PORTER
Attorney at Law

Attorney for Defendant
STEPHANIE MADSEN

# ATTACHMENTS

| | |
|---|---|
| Attachment A | Statement of Reasons |
| Attachment B | Bureau of Prisons forms |
| Attachment C | Letter from Stephanie Madsen |
| Attachment D | Documents concerning the Yale Prison Education Initiative |
| Attachment E | Letters from Natasha Garcia, Anahi Perales, and Dena Snyder |
| Attachment F | Letter from Ernie Gaddis |
| Attachment G | Letter from Joanna Sheridan |
| Attachment H | Documents from *United States v. Darrell Smith*, N.D. Cal. No. 4:23-cr-00110 YGR |
| Attachment I | FSL Danbury, Female Integrated Treatment (FIT) Program Community Handbook |