# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEPHANIE MADSEN,<br><br>Defendant. | Case No. 1:20-cr-00238 JLT SAB<br><br>ORDER DENYING MOTION TO REDUCE SENTENCE<br><br>(Doc. 2056) |

Stephanie Madsen moves to reduce her sentence under 18 U.S.C. § 3582(c)(2), citing Amendment 821 to the Federal Sentencing Guidelines. (Doc. 2056.) She has not demonstrated that a shorter sentence is warranted under the factors listed in 18 U.S.C. § 3553(a), so the motion is **DENIED**.

## BACKGROUND

Madsen was charged in this case with several crimes related to the possession and distribution of methamphetamine and heroin. (*See* Doc. 130.) The government alleged she worked with a group of co-conspirators that had connections to the Aryan Brotherhood, a violent prison gang. (*See* Docs. 548 at 4–9; 130 at 1–3, 7–8.) In addition to the federal charges in this case, Madsen was prosecuted in state superior court. (*See* Doc 2076-2 at 1–3.) The state charges were quite different from the charges in this case. Prosecutors alleged in state court that she had violated sections 487(b)(3) and 530.5(a) of the state Penal Code. (*Id.* at 1.) Section 487 defines

1

an employee's or agent's theft of more than $950 within a twelve-month period as grand larceny. Cal. Pen. Code § 487(b)(3).  Section 530.5(a) imposes criminal penalties on those who "willfully" obtain and use the "personal identifying information" of another person "for any unlawful purpose."  *Id.* § 530.5(a).  The state charges were filed in June 2021 and were based on events in early 2019.  (*See* Doc. 2076-2 at 2.)  The charges in this case were filed earlier, in December 2020, but were based on events that occurred later, in September and October 2020.  (*See* Doc. 130 at 1–2.)

Madsen signed a plea agreement in this case in August 2022.  (Doc. 371.)  She agreed to plead guilty to the twelfth count in the indictment, which alleged a violation of 21 U.S.C. §§ 814 and 846, i.e., conspiracy to distribute methamphetamine and to possess methamphetamine with the intent to distribute it.  (Doc. 371.)  She admitted that she had worked with others to transport several pounds of methamphetamine from California to Montana on three separate occasions.  (*Id.* at 11.)  The government agreed to dismiss the remaining charges and to recommend a sentence within the applicable guidelines range.  (*Id.* at 5.)  Madsen and her counsel could request any sentence they thought was appropriate.  (*Id.* at 2.)

This Court accepted Madsen's guilty plea in September 2022.  (Doc. 373.)  A probation officer then prepared a presentence investigation report, which included a calculation of her sentencing range under the advisory Guidelines.  (Doc. 548.)  Based on the 2021 Sentencing Guidelines Manual, her base offense level was 38.  (*Id.* at 10.)  That level was reduced by three levels under sections 3E1.1(a) and (b) of the Guidelines in recognition of her acceptance of responsibility and her assistance in the investigation and prosecution of her own misconduct.  (*Id.* at 11.)  The state court charges described above were still pending, so her criminal history score was zero, and her criminal history category was I.  (*Id.* at 14.)  The advisory Guidelines range was therefore 168 to 210 months' incarceration, followed by five years' supervised release.  (Doc. 548-1.)

In addition to the calculation of the Guidelines sentencing range and a summary of Madsen's personal history and characteristics, the presentence investigation report summarized the underlying conspiracy and the government's investigation.  (*See* Doc. 548 at 4–9.)  A few

details from that section are relevant to Madsen's pending motion.  Federal agents arranged for controlled purchases of drugs and guns from suspects with connections to the Aryan Brotherhood, then began intercepting and listening in on phone calls between several people in a suspected conspiracy, including Madsen and a man named Kenneth Bash.  (*See id.* at 5–6.)  In September 2020, calls between Madsen, Bash, and others revealed that Bash had instructed someone to deliver firearms and money to Madsen.  (*Id.* at 7.)  Two days later, Bash told Madsen that someone was coming to meet her and to pick up methamphetamine and "possibly" a gun.  (*Id.*)  Madsen did not object to the presentence investigation report, and she does not now contend that it portrays her conversations inaccurately.  (*See* Docs. 548-2 at 1; 2082 at 1–2.)  But the government did not pursue any gun charges against her; nor did the presentence investigation report recommend any enhancements or other sentencing calculations related to the use or possession of any firearms.  (*See id.* at 11.)

This Court held a sentencing hearing in March 2023.  (Doc. 581.)  The government recommended a sentence of 150 months, below the Guidelines range, based on "the agreement of the parties," the sentencing factors in 18 U.S.C. § 3553(a), and its motion for a departure under section 5K1.1.  (Docs. 561 at 3; 2056-1 at 3.)  Madsen requested a lower sentence.  The Court imposed a prison sentence of 150 months based on Madsen's employment record, her difficult upbringing, and the other relevant sentencing factors.  (*See* Doc. 2056-1 at 4.)

Madsen entered a guilty plea in the state court case after she began serving her federal sentence.  (Doc. 2076-2.)  She pleaded guilty to the first charge for grand larceny.  (Doc. 2076-2 at 5.)  She admitted "that on the dates charged, [she] did unlawfully, while being the agent/employee of another, steal property from my principal/employer valued over $950."  (*Id.* at 7.)  She agreed the "[t]otal amount of theft" was "$71,000."  (*Id.* at 7.)  The remaining charges were dismissed on the government's motion (*id.* at 10), and the state court imposed a stipulated sentence of sixteen months, to run concurrently with her federal sentence in this case (*id.* at 5).

Madsen is serving her sentence in FCI Danbury.  (Doc. 2076-1 at 3.)  After accounting for all statutory credits, her projected release date is in January 2031.  (*Id.*)

The Sentencing Commission amended a relevant provision of the federal sentencing

3

guidelines after Madsen began serving her sentence.  Under Part B, Subpart 1 of Amendment 821 (commonly cited as the "zero-point offender" provision), which went into effect in November 2023, a defendant's offense level is reduced by two points if the defendant has a criminal history score of zero and satisfies several other criteria, such as not possessing or transferring any firearms in connection with the offense.  *See* U.S.S.G. § 4C1.1(a).

Madsen moves to reduce her sentence under 18 U.S.C. § 3582(c)(2), citing the zero-point offender provision.  (Doc. 2056.)  She argues that she would have received a shorter sentence if she had been sentenced under the amended Guidelines because she had a criminal history score of zero and otherwise satisfied the relevant criteria.  (*See id.* at 6–7.)  She also argues that a shorter sentence would be appropriate under the factors listed in section § 3553(a).  (*Id.* at 7–11.)  She cites her completion of courses in successful employment and drug education, among others; her low risk of recidivism under an assessment by the Bureau of Prisons; her enrollment in a selective college program, the Yale Prison Education Initiative; her release plan; the support from her longtime friend; and her willingness to testify in the trial of a prison guard accused of sexual assault.  (*See id.*)

The government opposes her motion.  (Doc. 2076.)  It acknowledges that she "may technically qualify as a zero-point offender," but it contends that a reduction would not be appropriate.  (*Id.* at 6–7.)  It first cites her grand larceny conviction in state court, which, as the government emphasizes, was based on conduct predating her participation in the conspiracy to possess and distribute methamphetamine.  (*Id.* at 6.)  In the government's view, Madsen's criminal history score of zero is merely the result of "fortuitous timing," i.e., the later date of her state court plea and conviction.  (*Id.*)  Second, the government contends she should not be allowed to benefit from the zero-point offender provision because she "likely possessed firearms in connection with her offense," citing her calls with Bash.  (*Id.*)  Third, the government cites Madsen's record of prison discipline.  (*Id.* at 2.)  Records show she was disciplined for "disruptive conduct" on May 19, 2025.  (Doc. 2076-1 at 1.)  According to her reply brief, this incident involved "misuse of a texting app."  (Doc. 2082 at 2.)  She was also disciplined for contacting the public without authorization on March 4, 2025.  (Doc. 2076-1 at 1.)  She claims in

4

reply that "she congratulated the brother of another inmate on the latter's video call, a practice she did not know was prohibited at FCI Danbury." (Doc. 2082 at 2.)  Finally, the government argues her 150-month sentence is justified given the "nature and circumstances" of her offense, including her "affiliation" with members of the Aryan Brotherhood and the concurrent nature of her state and federal sentences.  (*Id.* at 7.)

With the filing of Madsen's reply (Doc. 2082), briefing is now complete.  The Court found a hearing was not necessary.

## LEGAL STANDARD

In general, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c).  The judgment in a criminal case is "final" and cannot be changed except in "limited circumstances."  *Dillon v. United States*, 560 U.S. 817, 824 (2010).  Those limited circumstances include a reduction to recognize that the relevant sentencing range was "lowered by the Sentencing Commission" after the conviction became final.  18 U.S.C. § 3582(c)(2).  In such a case, "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  *Id.*  The relevant policy statement is found in section 1B1.10 of the Sentencing Guidelines.  *See Dillon*, 560 U.S. at 825; *United States v. Tercero*, 734 F.3d 979, 983 (9th Cir. 2013).

Based on these provisions, the Supreme Court has instructed district courts to follow a two-step process in response to motions under § 3582(c)(2).  *See Dillon*, 560 U.S. at 826; *United States v. Brito*, 868 F.3d 875, 879–80 (9th Cir. 2017).  The court begins by "determining the amended guideline range that would have been applicable to the defendant had the relevant amendment been in effect at the time of the initial sentencing."  *Dillon*, 560 U.S. at 827 (citation, quotation marks, and alterations omitted).  If the defendant would have received a shorter sentence under the amended guidelines, then the court must consider the sentencing factors in 18 U.S.C. § 3553(a) and determine whether, in its discretion, "the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case."  *Dillon*, 560 U.S. at 827.

**DISCUSSION**

At the first step, the government does not dispute Madsen's assertion that she could have pursued a two-point reduction in her offense level if Amendment 821 had been in effect at the time. (*See* Doc. 2076 at 6.) The Court agrees that the relevant amendment was retroactive and would have applied in Madsen's case, given her criminal history score of zero and the Sentencing Commission's relevant policy statement. *See* U.S.S.G. §1B1.10(b)(2)(B), (d). Madsen's offense level could have been further reduced to 33, leading to an advisory Guidelines sentencing range of 135 to 168 months, and a further reduction to 122 months would have been possible under sections 5K1.1 and 1B1.10(b)(2)(B). The only question is whether a reduction "is warranted in whole or in part under the particular circumstances of the case" at the second step of the relevant test. *Dillon*, 560 U.S. at 827.

The circumstances of this case do not justify a reduction, largely for the reasons in the government's opposition. The Sentencing Commission adopted Amendment 821 based in part on "its studies of recidivism among federal offenders, as well as other extensive data analyses of offenders with no criminal history points, and public comment." U.S. Sent. Comm'n, Amendment 821 (Nov. 1, 2023). The Commission found "that offenders with zero criminal history points have considerably lower recidivism rates than other offenders, including offenders with one criminal history point." *Id.* One report showed that "'zero-point offenders' were less likely to be rearrested than 'one point' offenders (26.8% compared to 42.3%), the largest variation of any comparison of offenders within the same Criminal History Category." *Id.* (citing U.S. Sent'g Comm'n, Revisiting Status Points (2022)). In short, available data showed that people without any history of criminal conduct were less likely to commit another crime on the whole, even less likely than those with the most minor criminal history.

This rationale makes Amendment 821 an awkward fit for Madsen's case, to say the least. Her pending motion is, in effect, a request to apply a presumption about the risks of future offense by those who have not committed crimes in the past, and yet she has admitted to stealing thousands of dollars from an employer before the events that ultimately led to her arrest and prosecution on federal charges. And so, although it is true that her criminal history score was

zero at the time of her federal sentencing, she had already completed the acts that would later support her felony conviction under state law. Her criminal history score demonstrates more about the relative speeds of the state and federal criminal systems in her case than it does about the risks of recidivism based on the data that motivated Amendment 821.

Madsen has not explained why it would nevertheless be appropriate to reduce her sentence based on her criminal history. In reply to the government's opposition, she dismisses its concerns as "novel" and reiterates that she would have been eligible for a reduction under a formal reading of Amendment 821. (*See* Doc. 2082 at 2–3.) That is not the question. The government has already conceded that she would have been eligible as a technical matter, and the Court has reached the same conclusion. The question is whether the particular circumstances of her case justify a reduction. The conduct underlying the state conviction is a relevant aspect of her "history" under § 3553(a). She undercuts her motion by failing to address that conduct or her conviction.

The record beyond her motion raises several unanswered questions as well. When Madsen discussed the matter with a representative of the Probation Department, she minimized the state court case by describing it as a "misunderstanding" about an "inadvertently" incorrect social security number. (*See* Doc. 548 at 15.) And according to her presentence investigation report—which, again, did not draw objections—she had failed to appear at an arraignment in the state court case in August 2021, leading to a warrant for her arrest while she was on pretrial release in this case. (*See* Docs. 129 at 1; 548 at 15.) But her pretrial release was not revoked in this case until a pretrial services officer learned independently about her allegedly fraudulent conduct and her prohibited contacts with a codefendant. (*See* Docs. 313, 315.)

The Court also hesitates to reduce Madsen's sentence in the face of the amended Guidelines' express prohibition against reductions in cases involving the possession or transfer of firearms. *See* U.S.S.G. 4C1.1(a)(7). The Sentencing Commission's decision to add that exclusionary criterion was "again informed by extensive data analyses and public comment." U.S. Sent. Comm'n, Amendment 821 (Nov. 1, 2023). As summarized above, the investigation that ultimately led to Madsen's arrest began with undercover purchases of both drugs and guns.

Phone calls between Madsen and her coconspirators also imply strongly that she helped her coconspirators transfer both drugs and guns. To be clear, and as noted above, the government did not pursue any gun charges against Madsen, her sentence involves no firearms enhancements, and the government does not claim even now that any possessions or transfers of firearms would disqualify her under the terms of Amendment 821. It argues instead, and the Court agrees, that her apparent willingness to transfer firearms on behalf of people with connections to a violent prison gang is a relevant aspect of "the nature and circumstances of the offense" in the second part of the two-part test. (*See* Doc. 2076 at 6–7.)

The broader circumstances of Madsen's offense weigh similarly against a reduction. She and helped transport several pounds of methamphetamine across state lines, and she participated in at least three separate attempts to transport those drugs. Her personal circumstances and her difficult upbringing do warrant careful consideration, but the Court took those matters into consideration at her original sentencing.

The Court acknowledges Madsen's substantial and significant efforts to make the best out of her conviction and imprisonment. These efforts show that her history of relatively minor prison discipline are no reason for concern, but they do not justify a shorter sentence, given the other factors and circumstances discussed above. As the government correctly notes, post-conviction efforts to follow prison rules and regulations, to take courses, to participate in other programming, and to plan for a successful post-prison life often fall short of showing that a shorter sentence is warranted under § 3582(c)(2) and Amendment 821. *See, e.g.*, *United States v. Co*, No. 16-00167, 2025 WL 1836332, at *2 (E.D. Cal. July 3, 2025); *United States v. Brewer*, No. 20-00198, 2025 WL 1235118, at *4 (E.D. Cal. Apr. 29, 2025); *United States v. Webb*, No. 15-00134, 2025 WL 436923, at *2 (E.D. Cal. Feb. 7, 2025); *United States v. Maxey*, No. 16-00069, 2024 WL 3594796, at *2–3 (E.D. Cal. July 30, 2024).

In sum, the Court finds that the nature and circumstances of the offense, Madsen's history and characteristics, the seriousness of the offense, the need for deterrence, the need to protect the public, and the need for further educational and vocational training all support the sentence Madsen is currently serving. *See* 18 U.S.C. § 3553(a)(1), (a)(2). The remaining sentencing

factors do not weigh as heavily in the balance and do not justify a reduction.

**CONCLUSION**

The motion for a reduction in sentence (Doc. 2056) is **DENIED**.

IT IS SO ORDERED.

Dated:   **May 6, 2026**

UNITED STATES DISTRICT JUDGE